**CASE NO. 15-3621**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**CITY OF BLUE ASH, OHIO**

Cross-Claim Plaintiff/Appellant,

v.

**FORD MOTOR CREDIT COMPANY, LLC**

Cross-Claim Defendant/Appellee.

Appeal from the United States District Court
for the Southern District of Ohio, Western Division

**BRIEF OF CROSS-CLAIM PLAINTIFF/APPELLANT
CITY OF BLUE ASH, OHIO**

Bryan E. Pacheco (0068189)
Mark G. Arnzen, Jr. (0081394)
DINSMORE & SHOHL LLP
1900 First Financial Center
255 East Fifth Street
Cincinnati, Ohio 45202
Phone:        (513) 977-8200
Fax:          (513) 977-8141
Email: bryan.pacheco@dinsmore.com
       mark.arnzen@dinsmore.com

**Attorneys for Cross-Claim Plaintiff/
Appellant City of Blue Ash, Ohio**

# **TABLE OF CONTENTS**

**PAGE**

STATEMENT IN SUPPORT OF ORAL ARGUMENT ......................................... 1

JURISDICTIONAL STATEMENT ........................................................................ 1

STATEMENT OF THE ISSUES ........................................................................... 1

STATEMENT OF THE CASE ............................................................................... 2

    A. Procedural History ........................................................................................ 2

    B. Factual Background ...................................................................................... 4

        1.   Blue Ash Lawfully Seizes Right-Now's Trucks Under A   Valid Search Warrant. ................................................................... 4

        2.   Blue Ash Executes The Search Warrant At Right-Now On December 14, 2010 And Seizes The Trucks. ...................................... 5

        3.   Federal Authorities Adopt Blue Ash's Investigation And  Decline To Pursue Forfeiture Of Right-Now's Property.   The Trucks Are Then Released to Ford ......................................................................... 6

        4.   Ford Denies Blue Ash's Demand for Defense And Indemnification Under The Hold Harmless Agreements. .................. 9

SUMMARY OF ARGUMENT ............................................................................ 10

ARGUMENT ...................................................................................................... 13

    A. Standard of Review ..................................................................................... 13

    B. The District Court Erred When It Denied Blue Ash Summary Judgment On Its Cross-Claim For Breach Of Contract Against Ford. .......................... 15

        1. Under The Clear And Unambiguous Terms Of The Hold Harmless Agreements, Ford Was Required To Indemnify And Hold Blue Ash Harmless For Right-Now's Claim For Damages. .............................. 16

        2.   The District Court Erred In Finding A Factual Dispute Regarding Consideration Because Ford's Own Call Logs Demonstrate A Bargained-For Exchange. ................................................................. 22

    C. The District Court Erred In Granting Ford's Motion For Summary Judgment On The City's Promissory Estoppel Cross-Claim Because Ford's Promise To Indemnify The City Was Clear And Unambiguous. ................. 23

    D. The District Court Erred In Granting Ford's Motion For Summary Judgment On The City's Cross-Claim For Indemnification Because Ford Was Primarily Liable For Right-Now's Damages. ...................................... 25

i

CONCLUSION ....................................................................................28

CERTIFICATE OF COMPLIANCE ....................................................29

CERTIFICATE OF SERVICE ..............................................................29

# TABLE OF AUTHORITIES

PAGE

## CASES:

*ACLU of Ky. v. Grayson County*, 591 F.3d 837 (6th Cir. 2010) . . . . . . . . . . . . . 13

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). . . . . . . . . . . . . . . . . . . . 14

*Bono v. McCutcheon*, 159 Ohio App.3d 571, 2005-Ohio-299,
824 N.E.2d 1013 (2nd Dist.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . 14

*CIC Group, Inc. v. Mitchell*, N.D. Ohio No. 5-10-CV-02885,
2013 U.S. Dist. LEXIS 26878 (Feb. 27, 2013) . . . . . .. . . . . . . . . . . . . . . . . . 14

*Cincinnati Ins. Co. v. Savarino Constr. Corp.*, S.D. Ohio No. 2:09-CV-1061,
2011 U.S. Dist. LEXIS 29899 (Mar. 21, 2011) . . . . . . . . . . . . . . . . . . . . . . 16-17

*Cleary v. Fidelity & Casualty Co.*, 29 Ohio App. 425, 163 N.E. 628
(1st Dist. 1928) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Cleveland Clinic Health Sys. v. Innovative Placements, Inc.*, N.D. Ohio No.
1:11-CV-2074, 2012 U.S. Dist. LEXIS 76956 (June 4, 2012) . . . . . . . . . . . 16-17

*Cleveland Window Glass & Door Co. v. Nat'l Surety Co.*,
118 Ohio St. 414, 161 N.E. 280 (1928) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Consolidated Jewelers, Inc. v. Standard Financial Corp.*, 325 F.2d 31
(6th Cir. 1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Dana Corp. v. Fireman's Fund Ins. Co.*, N.D. Ohio No. 3:83CV1153,
1997 U.S. Dist. LEXIS 16414 (Mar. 11, 1997) . . . . . . . . . . . . . . . . . . . . . . 18-19

*Eckel v. Bowling Green St. Univ.*, 10th Dist. Franklin No. 11AP-781,
2012-Ohio-3164, . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Embassy Realty Invs., Inc. v. City of Cleveland*, N.D. Ohio No. 1:11-CV-1545,
2013 U.S. Dist. LEXIS 143828 (Oct. 4, 2013). .. . . . . . . . . . . . . . . . . . . . . . . 14

*Fifth Third Bank v. Ducru Limited Partnership*, 1st Dist. Hamilton No.
C-050564, 2006-Ohio-3860 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Guyan Int'l, Inc. v. Prof'l Benefits Adm'rs, Inc.*, N.D. Ohio No. 5:10-CV-823
2013 U.S. Dist. LEXIS 46297 (Mar. 29, 2013) . . . . . . . . . . . . . . . . . . . . . . . 13-14

*Lattea v. Akron*, 9 Ohio App.3d 118, 458 N.E.2d 868 (10th Dist. 1982) . . . . . . 25

*Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871 (1990) . . . . . . . . . . . . . . . . . . . . . 14

*Papatheodorou v. Clark*, 781 F. Supp. 2d 582 (N.D. Ohio 2011) . . . . . . . . . . . 16

*Savedoff v. Access Group, Inc.*, 524 F.3d 754 (6th Cir. 2008) . . . . . . . . . . . . . . 21

*Seals v. GMC*, 546 F.3d 766 (6th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*State v. Bates*, 6th Dist. Williams No. WM-11-007, 2012-Ohio-1397 . . . . . . . . 26

*Sweitzer v. American Express Centurion Bank*, 554 F. Supp.2d 788
(S.D. Ohio 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Tobias v. FirstEnergy Nuclear Operating Co.*, N.D. Ohio No. 3:02-CV-7589,
2004 U.S. Dist. LEXIS 29939 (Oct. 5, 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*United States v. McBride,* 362 F.3d 360 (6th Cir. 2004) . . . . . . . . . . . . . . . . . . . 18

*Wagner-Meinert, Inc. v. EDA Controls Corp.,* 6th Cir. No. 06-3777,
2007 U.S. App. LEXIS 4879 (Feb. 23, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Warren Drilling Co. v. Equitable Prod. Co.*, 6th Cir. Nos. 14-3872 & 14-3931,
2015 U.S. App. LEXIS 11530  (July 1, 2015) . . . . . . . . . . . . . . . . . . . . . . . . . 15, 18

*Westfield Ins. Co. v. Factfinder Mktg. Research, Inc.*, 168 Ohio App. 3d 391,
2006-Ohio-4380, 860 N.E.2d 145 (1st Dist.) . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

## **STATUTES:**

Fed. R. Civ. P. 56(C) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

## STATEMENT IN SUPPORT OF ORAL ARGUMENT

Cross-Claim Plaintiff/Appellant City of Blue Ash, Ohio (the "City" or "Blue Ash") requests that this Court conduct oral argument. Given the length and posture of the case, oral argument will assist the Court in obtaining a full understanding of the issues presented and the underlying facts. It will also allow the attorneys for both sides to address any outstanding issues the Court deems relevant.

## JURISDICTIONAL STATEMENT

(i) Subject-matter jurisdiction over this action is vested in the United States District Court for the Southern District of Ohio under 28 U.S.C. § 1367(a).

(ii) Appellate jurisdiction over this action is vested in the United States Court of Appeals for the Sixth Circuit under 28 U.S.C. § 1291.

(iii) The Notice of Appeal was timely filed on June 1, 2015.

(iv) This appeal is from a May 5, 2015 Agreed Order of Dismissal and a March 16, 2015 Opinion and Order of the United States District Court for the Southern District of Ohio that disposed of all claims.

## STATEMENT OF THE ISSUES

(1)    Whether the District Court erred in denying Blue Ash summary judgment on liability on its Cross-Claims for breach of contract and common law

indemnification against Cross-Claim Defendant/Appellee Ford Motor Credit Company ("Ford").

(2)    Whether the District Court erred in granting summary judgment to Ford on all of Blue Ash's Cross-Claims.

(3)    Whether the District Court erred in finding that a question of fact existed on whether there was valid consideration supporting the written contracts between Blue Ash and Ford.

## STATEMENT OF THE CASE

### A.    Procedural History

On May 22, 2011, Right-Now Recycling, Inc. ("Right-Now") sued Ford in Hamilton County Common Pleas Court, seeking the return of a Ford F550 truck and a Ford F250 truck (collectively, the "Trucks").  (Right-Now's Complaint, RE 3, Page ID # 36-40).  In December 2010, the Trucks were seized by Blue Ash under a lawful search warrant.  (*Id.* at 37).  They were released to Ford, the lienholder, in February 2011.  (*Id.*).  Right-Now sought damages from Ford for breach of contract, unjust enrichment, and violations of due process and equal protection.  (*Id.* at 38-39).

Ford removed the action to the District Court in June 2011. (Notice of Removal, RE 1, Page ID # 1-4).  Following removal, Right-Now amended its complaint to include a Fourteenth Amendment due process claim against the City,

seeking damages for the loss of the use of its Trucks. (Right Now's Amended Complaint, RE 36, Page ID # 194-207).

In June 2012, Blue Ash answered Right-Now's Amended Complaint. (Blue Ash's Answer, RE 52, Page ID # 246-57). After answering the Amended Complaint, the City sought indemnity from Ford for any expenses it would incur due to Right-Now's claims, under a clear and unambiguous contract. (*See* Magistrate Order Granting Leave to Amend, RE 74, Page ID # 369-70 (*citing* Blue Ash Motion for Leave, RE 56, Page ID # 262-67)). Ford refused, and the City moved for leave to amend its Answer to assert Cross-Claims for breach of contract, promissory estoppel, and contribution/indemnification. (*See* Blue Ash Motion for Leave, RE 56, Page ID # 262-67). The Magistrate Judge granted the City's motion, correctly finding that "the indemnification agreement [between the City and Ford] encompasses [Right-Now's] claims against [the City]." (*See* Magistrate Order Granting Leave to Amend, RE 74, Page ID # 372).

After discovery, both parties moved for summary judgment on the Cross-Claims. (*See* Ford's MSJ, RE 120, Page ID # 2329-49; Blue Ash's MSJ, RE 121, Page ID # 2362-2371). On October 1, 2014 the Magistrate Judge issued her Report and Recommendation ("Report"), recommending that the City's motion be denied and that Ford's motion be granted. (*See* Magistrate's Report and Recommendation, RE 140, Page ID # 2937-2990). On March 16, 2015, the

District Court overruled Blue Ash's objections to the Report and adopted the Magistrate Judge's recommendation in its entirety. (Blue Ash Objection to Report and Recommendation, RE 146, Page ID # 3082-94; MSJ Opinion and Order, RE 152, Page ID # 3132-3152).

On May 5, 2015, the District Court entered an Agreed Order of Dismissal. (Agreed Order of Dismissal, RE 155, Page ID # 3156-57). The Agreed Order, in conjunction with the District Court's March 16, 2015 Opinion and Order ("Opinion"), terminated all claims asserted by the parties. On June 1, 2015, Blue Ash appealed to this court. (Notice of Appeal, RE 156, Page ID # 3158-59).

B.    **Factual Background**

1.    **Blue Ash Lawfully Seizes Right-Now's Trucks Under A Valid Search Warrant.**

Right-Now is a recycling business that purchases scrap metals; it was owned by Dennis and Michelle Johnson. (*See* Magistrate's Report and Recommendation, RE 140, Page ID # 2938). Right-Now used the Trucks to move inventory from location to location. (*Id*.). The Trucks were obtained through Ohio Retail Financing Agreements with Ford. (*See* Right Now Motion for Partial Summary Judgment at Ex. 2, RE 94, Page ID # 543, 545).

In December 2010, two employees of Banta Electric were arrested and later indicted for selling stolen Duke Energy property to Right-Now. (*See* Larry Ratliff Depo., RE 108, Page ID # 1060, 1062; Steven Schlie Depo., RE 105, Page ID #

890; Mark G. Arnzen, Jr. Affidavit, RE No. 116-1, Page ID # 2225-27). Following

their arrests, the two Banta employees (as well as several others) were interviewed

by the Blue Ash police. (*See* Harold Daughtery Depo., RE 107, Page ID # 1029;

Larry Ratliff Depo., RE 108, Page ID # 1065). The Banta employees implicated

Right-Now in criminal activity. (*Id.*)

As a result of its investigation, Blue Ash secured a search warrant from a

Hamilton County, Ohio Municipal Court judge on December 14, 2010. (*See*

Robert Gerhardt Depo. Ex. 1, RE 104-1, Page ID # 781-82). The warrant

authorized the City to seize, among other things, Right-Now's Trucks. (*See id.*).

### 2.    Blue Ash Executes The Search Warrant At Right-Now On December 14, 2010 And Seizes The Trucks.

On December 14, 2010, Blue Ash seized the Trucks (and other property)

from Right-Now under the search warrant. (*See* Steven Schlie Depo., RE 105,

Page ID # 889, 893; James Kelley Depo., RE 103, Page ID # 649). Blue Ash

intended to forfeit the property it seized, including the Trucks. (*See* Dennis Boone

Depo., RE 112, Page ID # 2018). Thus, Detective James Kelley ("Detective

Kelley"), the City's forfeiture officer, began preparing the necessary paperwork to

forfeit the property. (*See* James Kelley Depo., RE 103, Page ID # 648, 662).

On December 15, Detective Kelley contacted Ford to determine the amount

of the liens on the Trucks. (*See* James Kelley Depo., RE 103, Page ID # 648,

James Kelley Depo. Ex. 2, RE 103-2, Page ID # 683). The following day, Ford

sent Detective Kelley two Petitions for Remission or Mitigation of Forfeiture (the "Petitions") related to the seized Trucks.  (*See* James Kelley Depo. Ex. 3, RE 103-3, Page ID # 684-85, 687).

The Petitions, which confirmed the amount of Ford's liens, stated: "Ford . . . in its contract expressly mandates conformance with all laws in the use of its vehicles and alleges that possession and use of the vehicle for any illegal purpose was without its consent, either expressed or implied . . ."  (*See id*. at 685, 687). According to Ford, Blue Ash's seizure of the Trucks constituted a breach of Right-Now's contract and entitled Ford to possession of the vehicles.  (*See* Barbara Burton Depo., RE 106, Page ID # 965, 967).

### 3. Federal Authorities Adopt Blue Ash's Investigation And Decline To Pursue Forfeiture Of Right-Now's Property. The Trucks Are Then Released to Ford.

On December 21, one week after the search warrant was executed at Right-Now's facility, members of the Blue Ash Police Department met with Assistant U.S. Attorney for the Eastern District of Kentucky, Robert McBride ("Mr. McBride"), an IRS special agent, and members of a Northern Kentucky task force investigating the theft of property from Duke Energy.  (*See* Steven Schlie Depo., RE 105, Page ID # 892; Robert Gerhardt Depo. Ex. 16, RE 104-7, Page ID # 821). Federal investigators had an active investigation involving Banta and others, and Mr. McBride wanted "to adopt [Blue Ash's] case . . ."  (*See* Robert Gerhardt

6

Depo., RE 104, Page ID # 734).  Mr. McBride instructed the City to hold the Trucks.  (Dennis Boone Depo., RE 112, Page ID # 2032).  As of December 21, 2010, the Trucks "were still being held as evidence."  (*See* James Kelley Depo., RE 103, Page ID # 664).

Through January 2011, Blue Ash was "waiting [for] guidance from the . . . Assistant U.S. Attorney" on how to proceed with either a release or forfeiture of the Trucks.  (*See* James Kelley Depo., RE 103, Page ID # 665).  Eventually, Mr. McBride informed the City that federal authorities were not interested in forfeiting Right-Now's property.  (*See id.*; Dennis Boone Depo., RE 112, Page ID # 2032; Richard Riley Depo., RE 111, Page ID # 1939).  As a result, Blue Ash did not "go to completion on forfeiture on anything . . . per the federal prosecutor."  (*See* Dennis Boone Depo., RE 112, Page ID # 2025).

At that point, Detective Kelley spoke with Ford representative Barbara Burton ("Ms. Burton") and advised that the Trucks would not be released unless Ford signed the City's Seized Property Releases.  (*See* James Kelley Depo., RE 103, Page ID # 665).  On February 16, 2011, Ford executed a "Seized Property Release" for each Truck, stating that it was the innocent lien holder. (*See id.* at 650; James Kelley Depo. Ex. 9, RE 103-9, Page ID # 710-21; James Kelley Depo. Ex. 10, RE 103-10, Page ID # 722).  Ford expected Blue Ash to immediately release the Trucks.  (*See* James Kelley Depo., RE 103, Page ID # 650).

7

Also on February 16, 2011, Ford executed hold harmless agreements with Blue Ash for both Trucks (the "Hold Harmless Agreements"). (*See id*. at 650-51; James Kelley Depo. Ex. 11, RE 103-11, Page ID # 723; James Kelley Depo. Ex. 12, RE 103-12, Page ID # 724-25). The Hold Harmless Agreements were prepared by Ford and used regularly by it to obtain seized vehicles where it was the lien holder. (*See* James Kelley Depo., RE 103, Page ID # 651).

In the Hold Harmless Agreements, Ford represented that it was "entitled to possession of the vehicle[s] under [its] contractual agreement[s] made with Right-Now Recycling." (*See id*.; James Kelley Depo. Ex. 11, RE 103-11, Page ID # 723; James Kelley Depo. Ex. 12, RE 103-12, Page ID # 724-25). Significantly, Ford agreed to "indemnify and hold [Blue Ash] harmless for **any liability or claim** made against [Blue Ash] arising out of [Blue Ash's] releasing of this vehicle to Automobile Recovery." (*See id*.) (emphasis added). Automobile Recovery was Ford's "contracted agency" for the release of the Trucks, and was retained to pick up the Trucks on Ford's "behalf." (*See* James Kelley Depo., RE 103, Page ID # 651).

On February 16, 2011, Ford initiated a "repossession request" to Automobile Recovery, directing it to "pick up" the Trucks from Blue Ash. (*See id*. at 660-61). Based on the Hold Harmless Agreements and Ford's representations, Blue Ash released the Trucks to Automobile Recovery on February 17, 2011. (*See* Ford's

Answer to Cross-Claim, RE 76, Page ID # 405).  Ford held the Trucks thereafter.

On May 4, 2011, two days after Right-Now sued Ford in state court, Ford released

the Trucks.  (*See id.*).

### 4.    Ford Denies Blue Ash's Demand for Defense And Indemnification Under The Hold Harmless Agreements.

On March 22, 2012, Right-Now brought its Amended Complaint, alleging

that Blue Ash violated 42 U.S.C. § 1983 and the Fourteenth Amendment by

"seizing and depriving [it] of items that were not used in criminal activity and

transferring seized property of Right-Now without providing Right-Now notice

and a reasonable opportunity to be heard."    (*See* Right-Now's Amended

Complaint, RE 36, Page ID # 203-04).  Five days later, and pursuant to the Hold

Harmless Agreements, Blue Ash demanded that Ford defend and indemnify it as to

any settlement, judgment, or other expense incurred as a result of Right-Now's

claims.  (*See* Blue Ash Amended Answer and Cross-Claim, RE 75, Page ID # 387;

Ford's Answer to Cross-Claim, RE 76, Page ID # 405).  On April 24, 2012,

however, Ford refused to defend or indemnify the City.  (*See* Blue Ash Amended

Answer and Cross-Claim, RE 75, Page ID # 388; Ford's Answer to Cross-Claim,

RE 76, Page ID # 406).

As set forth in detail below, this Court should reverse the District Court's

Opinion.  Based on the undisputed facts and the clear and unambiguous terms of

the Hold Harmless Agreements, Blue Ash was entitled to summary judgment on

liability on its Cross-Claims against Ford for breach of contract and common law indemnification.  In contrast, Ford's motion for summary judgment on all of the City's Cross-Claims should have been denied by the District Court.

## SUMMARY OF ARGUMENT

First, the District Court erred in denying Blue Ash's motion for summary judgment on liability on its Cross-Claim for breach of contract against Ford.  Ford explicitly agreed to "indemnify and hold [Blue Ash] harmless for any liability or claim made against [Blue Ash] arising out of [Blue Ash's] releasing of [the Trucks] to Automobile Recovery."  (Barbara Burton Depo. Ex. 11, RE 106-6, Page ID # 985; Barbara Burton Depo. Ex. 12, RE 106-7, Page ID # 986).  The Hold Harmless Agreements are clear and unambiguous.  They clearly encompass Right-Now's claim for damages against Blue Ash for the loss of use of the Trucks.

Indeed, the damages claimed by Right-Now unequivocally arose out of the release of the Trucks to Ford.  The seizure of Right-Now's Trucks was lawful, and Blue Ash was entitled to hold the Trucks as evidence during its investigation.  Thus, the District Court properly found "that the relevant time period [was] February 2011" when Blue Ash released the Trucks to Ford.  (*See* MSJ Opinion and Order, RE 152, Page ID # 3141-42).  In other words, Right-Now's damages were incurred after the Trucks had been released to Ford.

Moreover, the District Court impermissibly added terms to the one page Hold Harmless Agreements.  According to the District Court, "[t]he damages provision ties the limit of Ford's potential liability under the Hold Harmless Agreements directly to the value of the Trucks, *thereby indicating that Ford shall be liable for physical damages or other physical loss or disposal of the vehicle after the seizing authority releases the vehicle*."  (*See id.* at 3148) (emphasis added).  In reality, the Hold Harmless Agreements do not so limit Ford's liability to physical damage, or any other damage for that matter.  Nor is there any "indication," much less competent summary judgment evidence, that is what the plain language says or what the parties intended.

Second, the District Court determined "that there [was] conflicting evidence presented by the parties such that there [was] a genuine issue of material fact as to whether there [was] valid consideration . . ." for the Hold Harmless Agreements. (*See id.* at 3149).  But Ford's own documents and conduct establish a bargained-for exchange, i.e. the Trucks would not be released until Ford provided Blue Ash with the documentation it (Blue Ash) requested, including the Hold Harmless Agreements.  *A day after that documentation was provided, Blue Ash released the Trucks to Ford*.  The undisputed facts show that there was more than sufficient consideration for the Hold Harmless Agreements.

11

Third, even if the Hold Harmless Agreements did not require Ford to indemnify Blue Ash for Right-Now's claims, the District Court erred in granting summary judgment to Ford on Blue Ash's promissory estoppel Cross-Claim. The District Court erroneously concluded that "the City's claim for promissory estoppel fails for lack of a 'clear, unambiguous promise' that Ford would indemnify the City and hold the City harmless for the [sic] any constitutional violations by the City occurring prior to the release of the vehicles." (*See id.* at 3150).

But the promise Ford made was that it would indemnify Blue Ash and hold it harmless for "*any liability or claim*." Obviously, "any claim" would include Right-Now's claim for damages against Blue Ash. Blue Ash relied on this promise . . . and the day after the promise was made it released the Trucks to Ford. At the very least, fact questions exist as to Blue Ash's promissory estoppel Cross-Claim.

Finally, the District Court erred in denying Blue Ash's motion for summary judgment on liability on its Cross-Claim against Ford for common law indemnification. Because Blue Ash lawfully seized the Trucks under a valid search warrant, Right-Now was not entitled to their return while they were being held as evidence. As a result, the only time period in which Right-Now could claim it was damaged was during the almost three month period when Ford – not Blue Ash – held the Trucks.

12

Further, Ford requested that Blue Ash release the Trucks. Ford told Blue Ash that it was entitled to possession of the Trucks under its contracts with Right-Now. If anyone was primarily liable for Right-Now's claimed damages, it was Ford, the party that had the ability to return the Trucks to Right-Now during the period of time that Right-Now was damaged.

For these reasons, and those set forth in more detail below, this Court should reverse the District Court's Opinion. Blue Ash's motion for summary judgment on liability on its Cross-Claims for breach of contract and common law indemnification should have been granted. And Ford's motion for summary judgment on all of the City's Cross-Claims should have been denied.

## ARGUMENT

### A.    Standard of Review

The Sixth Circuit reviews a district court's grant or denial of summary judgment *de novo*. *ACLU of Ky. v. Grayson County*, 591 F.3d 837, 843 (6th Cir. 2010). Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

"The moving party bears the initial responsibility of advising the Court of the basis for its motion and identifying the portions of the record which the movant

believes demonstrates the absence of a genuine dispute as to any material fact. Once the movant meets this burden, the opposing party must set forth specific facts showing that there is a genuine issue for trial." *Guyan Int'l, Inc. v. Prof'l Benefits Adm'rs, Inc.*, N.D. Ohio No. 5:10-CV-823, 2013 U.S. Dist. LEXIS 46297, *46 (Mar. 29, 2013) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) and *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)).

For Rule 56 purposes, "[a] fact is 'material' only if its resolution will affect the outcome of the lawsuit," *Embassy Realty Invs., Inc. v. City of Cleveland*, N.D. Ohio No. 1:11-CV-1545, 2013 U.S. Dist. LEXIS 143828, at *11 (Oct. 4, 2013) (citing *Anderson*, 477 U.S. at 248), and "[g]eneral averments or conclusory allegations of an affidavit do not create specific fact disputes for summary judgment purposes." *CIC Group, Inc. v. Mitchell*, N.D. Ohio No. 5:10-CV-02885, 2013 U.S. Dist. LEXIS 26878, *6 (Feb. 27, 2013) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990)). Moreover, "[t]he non-movant must show more than a scintilla of evidence to overcome summary judgment; it is not enough for the non-moving party to show that there is some metaphysical doubt as to material facts." *Embassy Realty*, 2013 U.S. Dist. LEXIS 143828 at *12.

**B.    The District Court Erred When It Denied Blue Ash Summary Judgment On Its Cross-Claim For Breach Of Contract Against Ford.**

The District Court found that Ford was not required to indemnify and hold Blue Ash harmless, under the Hold Harmless Agreements, because Right-Now's claims against the City did not "arise out" of the release of the Trucks.  (MSJ Opinion and Order, RE 152, Page ID # 3148).   Instead, the District Court determined that "Right-Now's due process claim flows from the failure of the City to give notice to Right-Now prior to release rather than from the release itself. As such, the indemnification and hold harmless provisions are not triggered in this instance."  (*See id.*).

In reaching this conclusion, the District Court focused solely on Right-Now's "due process claim."   But under the Hold Harmless Agreements, Ford promised to indemnify Blue Ash for "*any claim or liability*."   As this Court recently reiterated, "[a] 'claim' is a 'demand for . . . a legal remedy.'" *See Warren Drilling Co. v. Equitable Prod. Co*., 6th Cir. Nos. 14-3872 & 14-3931, 2015 U.S. App. LEXIS 11530, *11 (July 1, 2015).   Accordingly, Ford's indemnification obligations were triggered when Right-Now made a demand for a legal remedy. Right-Now sought damages from Blue Ash for the loss of use of the Trucks during the time they were in Ford's possession.

15

### 1. Under The Clear And Unambiguous Terms Of The Hold Harmless Agreements, Ford Was Required To Indemnify And Hold Blue Ash Harmless For Right-Now's Claim For Damages.

The Hold Harmless Agreements are simple, clear, and unambiguous. Ford agreed to "indemnify and hold [Blue Ash] harmless for any **liability or claim** made against [Blue Ash] arising out of [Blue Ash's] releasing" of Right-Now's Trucks. (*See* Barbara Burton Depo., RE 106, Page ID # 965-66; Barbara Burton Depo. Ex. 11, RE 106-6, Page ID # 985; Barbara Burton Depo. Ex. 12, RE 106-7, Page ID # 986). Right-Now claimed that it was entitled to damages from the City for the loss of use of the Trucks when they were in Ford's possession. (*See* Right Now's Amended Complaint, RE 36, Page ID # 200-01, 204-05). Under the plain language of the agreements, summary judgment on liability should have been granted to Blue Ash on its breach of contract Cross-Claim against Ford.

Ohio law has long recognized the contractual right to indemnity. *See Cincinnati Ins. Co. v. Savarino Constr. Corp.*, S.D. Ohio No. 2:08-CV-1061, 2011 U.S. Dist. LEXIS 29899, *2 (Mar. 21, 2011) (citing *Cleveland Window Glass & Door Co. v. Nat'l Surety Co.*, 118 Ohio St. 414, 161 N.E. 280 (1928)) ("The right to indemnification may arise from an express contract."); *Papatheodorou v. Clark*, 781 F. Supp. 2d 582, 586 (N.D. Ohio 2011). Under Ohio law, "[c]ourts interpret indemnity agreements the same way they interpret contracts, which is to say they give the terms of the contract their plain and ordinary meaning." *Cleveland Clinic*

*Health Sys. v. Innovative Placements, Inc.*, N.D. Ohio No. 1:11-CV-2074, 2012 U.S. Dist. LEXIS 76956, *4 (June 4, 2012) (internal citations omitted); *see also Cincinnati Ins.*, 2011 U.S. Dist. LEXIS 29899 at *22 ("The ordinary rules of contract construction apply to indemnity contracts.").

When a contract is clear and unambiguous, "the court need not go beyond the plain language of the agreement to determine the party's rights and obligations. Instead, the court must give effect to the contractual language." *See Fifth Third Bank v. Ducru Limited Partnership*, 1st Dist. Hamilton No. C-050564, 2006-Ohio-3680, ¶ 14; *see also Cincinnati Ins.*, 2011 U.S. Dist. LEXIS 29899 at *22-23 ("When enforcing an indemnity contract, the court must determine the intent of the parties from the language of the indemnity contract").  When, as here, "the language of a written contract is clear, a court may look no further than the writing itself to find the intent of the parties." *Cleveland Clinic*, 2012 U.S. Dist. LEXIS 76956 at **4-5.

Indeed, the court should not delete or insert words not used in the agreement. *See Eckel v. Bowling Green St. Univ.*, 10th Dist. Franklin No. 11AP-781, 2012-Ohio-3164, ¶ 23.  But the words that are "used in a contract for indemnity must be given their ordinary and popular meanings." *See Tobias v. FirstEnergy Nuclear Operating Co.*, N.D.Ohio No. 3:02-CV-7589, 2004 U.S. Dist. LEXIS 29939, *10 (Oct. 5, 2004).

In this case, the Hold Harmless Agreements clearly and unambiguously obligated Ford to indemnify Blue Ash for "any liability or claim" arising out of the release of the Trucks.  (*See* Barbara Burton Depo. Ex. 11, RE 106-6, Page ID # 985; Barbara Burton Depo. Ex. 12, RE 106-7, Page ID # 986).  A "claim" is simply a "'demand for . . . a legal remedy.'" *See Warren Drilling Co.*, 2015 U.S. App. LEXIS 11530 at *11; *see also United States v. McBride,* 362 F.3d 360, 371 (6th Cir. 2004) (*quoting* Black's Law Dictionary 247 (6th ed.1990)) (The ordinary meaning of the word "claim" is a "demand for money or property as of right."); *Dana Corp. v. Fireman's Fund Ins. Co.*, N.D. Ohio No. 3:83CV1153, 1997 U.S. Dist. LEXIS 16414, *27 (Mar. 11, 1997) ("Claim means: to demand as one's own or as one's right; to assert; to urge; to insist.  A cause of action . . . Demand for money or property as of right, *e.g.* insurance claim.") (*quoting* Black's Law Dictionary (6th ed. 1990)).

Notwithstanding this broad definition, the District Court focused solely on Right-Now's legal cause of action, i.e. the due process claim it asserted against Blue Ash, not that it had made a claim or demand.  According to the District Court, "Right-Now's *due process claim* does not 'arise out of' the release of the Trucks, but instead arises out of the City's failure to provide Right-Now prior notice of the City's intent to transfer possession of the Trucks to Ford."  (*See* MSJ Opinion and Order, RE 152, Page ID # 3148) (emphasis added).

Significantly, however, "[a] 'claim' is just not limited to a demand based on an assertion of right in a complaint in a lawsuit." *See Dana Corp.*, 1997 U.S. Dist. LEXIS 16414 at *27. Instead, Ford's contractual obligation to indemnify Blue Ash and hold it harmless for "any liability or claim" included the damages Right-Now sought "during the two to four-month period in which it lacked access to its various confiscated items[,]" including the Trucks. (*See* Right Now's Amended Complaint, RE 36, Page ID # 200-01, 204-05).

Furthermore, the damages Right-Now demanded from Blue Ash would not have been incurred had the Trucks never been released to Ford. In fact, Right-Now's due process claim would never have arisen if Blue Ash had refused to comply with Ford's (the lienholder) request to release the Trucks. Even the Magistrate Judge initially held that "under the plain terms of the indemnification agreement, Blue Ash has been subjected to a 'liability or claim' as a result of its release of the trucks to Ford." (*See* Magistrate Order Granting Leave to Amend, RE 74, Page ID # 372).

Simply put, Right-Now's claims, however characterized or pled, were solely premised on the release of the Trucks. Thus, there is a clear "causal relationship" between Right-Now's claims and the release of the Trucks to Ford. *See Westfield Ins. Co. v. Factfinder Mktg. Research, Inc*., 168 Ohio App. 3d 391, 2006-Ohio-4380, 860 N.E.2d 145, ¶ 41 (1st Dist.) ("The term arising out of has been

interpreted broadly under Ohio law to mean flowing from, having its origin in, or growing out of.  The phrase indicates a requirement of a causal relationship but not one of proximate cause.") (internal quotations and citations omitted).

The District Court also erred when it determined that Ford's indemnity obligations were limited to "physical damages" to the Trucks.  The District Court's Opinion states: "[t]he damages provision ties the limit of Ford's potential liability under the Hold Harmless Agreements directly to the value of the Trucks, *thereby indicating that Ford shall be liable for physical damages or other physical loss* or disposal of the vehicle after the seizing authority releases the vehicle."  (*See* Doc. No. 152 at 17) (emphasis added).

The District Court was not permitted to "remake the contract or add a condition which was not written into it."  *See Consolidated Jewelers, Inc. v. Standard Financial Corp*., 325 F.2d 31, 35 (6th Cir. 1963); *see also Cleary v. Fidelity & Casualty Co*., 29 Ohio App. 425, 427-28, 163 N.E. 628 (1st Dist. 1928) ("[I]n construing a contract, other words cannot be read into or added, nor can any be taken away by construction.").  But that is precisely what happened here.  The Hold Harmless Agreements do not limit Ford's liability to physical damage, or any other damage for that matter. (*See* Barbara Burton Depo. Ex. 11, RE 106-6, Page ID # 985; Barbara Burton Depo. Ex. 12, RE 106-7, Page ID # 986).

In fact, the words "physical" and "damage" are not even used in the Hold Harmless Agreements. (*See id*.).  Instead, the contracts — that Ford drafted — state only that "the *liability* of [Ford] to [Blue Ash], hereunder, shall be limited in amount to the value of the vehicle released to [Ford] or its agent."  (*See id.*) (emphasis added).

Ohio courts presume "that the intent of the parties to a contract resides in the language they chose to employ in the agreement . . ."  *See Seals v. GMC*, 546 F.3d 766, 771 (6th Cir. 2008).  Here, there is absolutely nothing in the Hold Harmless Agreements to support the District Court's conclusion that the parties intended Ford to only be responsible for "physical damages or other physical loss or disposal of the vehicle after the seizing authority releases the vehicle."  (*See* MSJ Opinion and Order, RE 152, Page ID # 3148).

In the end, the District Court misapplied the plain meaning of the Hold Harmless Agreements.  Consequently, it erred in finding that Ford was not obligated to indemnify the City. To the extent there was any ambiguity in the Hold Harmless Agreements, it should have been construed against Ford, the drafter of the contracts.  *See Savedoff v. Access Group, Inc*., 524 F.3d 754, 764 (6th Cir. 2008).  This Court should reverse the District Court's Opinion, apply the plain language of the Hold Harmless Agreements, and grant the City's motion for summary judgment on liability on its breach of contract Cross-Claim against Ford.

2.    **The District Court Erred In Finding A Factual Dispute Regarding Consideration Because Ford's Own Call Logs Demonstrate A Bargained-For Exchange.**

In its Opinion, the District Court concluded that there was "conflicting evidence presented by the parties such that there is a genuine issue of material fact as to whether there is valid consideration" for the Hold Harmless Agreements. (*See* MSJ Opinion and Order, RE 152, Page ID # 3149). To the contrary, the undisputed facts establish that the Hold Harmless Agreements are valid and enforceable contracts that Ford breached when it did not defend, indemnify, and hold the City harmless from the claims asserted by Right-Now.

First, Ford sought the release of the Trucks that Blue Ash had lawfully seized from Right-Now. In exchange, Ford promised to indemnify and hold Blue Ash harmless. (*See* Barbara Burton Depo. Ex. 11, RE 106-6, Page ID # 985; Barbara Burton Depo. Ex. 12, RE 106-7, Page ID # 986). On February 15, 2011, Ford's own call logs reflect that the following conversation took place:

> tt **Det Kelley** . . . **sd wl need copy of contract, hh and copy of notices he sent** . . . that FMCC is aware these vehicles were taken for violation of the law . . . if returned to customer we lose our innocent owner rights . . . **wants ppw faxed ahead** . . .

(*See* Barbara Burton Depo. Ex. 29, RE 106-10, Page ID # 995) (emphasis added).

*The next day*, Ford sent Detective Kelley copies of Right Now's Retail Installment Contracts (**contracts**), the "Hold Harmless Agreements" (**hh**), and the Seized Property Releases (**notices he sent**). (*See* Mark G. Arnzen, Jr.'s Affidavit in

Support of Blue Ash's Opposition to Ford's MSJ, RE 123-1, Page ID # 2429-35; Barbara Burton Depo., RE 106, Page ID # 964-966; Barbara Burton Depo. Ex. 9, RE 106-4, Page ID # 983; Barbara Burton Depo. Ex. 10, RE 106-5, Page ID # 984; Barbara Burton Depo. Ex. 11, RE 106-6, Page ID # 985; Barbara Burton Depo. Ex. 12, RE 106-7, Page ID # 986). *And then the very next day*, the Trucks were released to Ford. (*See* Ford's Answer to Cross-Claim, RE 76, Page ID # 405).

Clearly, there was "bargained-for consideration" (Ford's promise to indemnify), causing the City to immediately release the Trucks to Ford. This contemporaneous exchange constitutes adequate consideration. *See Bono v. McCutcheon*, 159 Ohio App.3d 571, 576 2005-Ohio-299, 824 N.E.2d 1013 (2nd Dist.) ("Something is bargained for if it is sought by the promisor in exchange for his promise and is given by the promisee in exchange for that promise."). Because Ford presented nothing to rebut these facts, the District Court's Opinion should be reversed.

### C. The District Court Erred In Granting Ford's Motion For Summary Judgment On The City's Promissory Estoppel Cross-Claim Because Ford's Promise To Indemnify The City Was Clear And Unambiguous.

Even if the Hold Harmless Agreements were unenforceable, or not supported by consideration, summary judgment still should not have been granted to Ford on Blue Ash's promissory estoppel Cross-Claim. In Ohio, the elements of promissory estoppel are: (1) a clear, unambiguous promise, (2) reliance upon the

23

promise by the person to whom the promise is made, (3) reliance that is reasonable and foreseeable, and (4) the person claiming reliance is injured as a result of reliance on the promise. *Sweitzer v. American Express Centurion Bank*, 554 F. Supp.2d 788, 796 (S.D. Ohio 2008).

The District Court concluded that the "City's claim for promissory estoppel fails for lack of a 'clear, unambiguous promise' that Ford would indemnify the City and hold the City harmless for the [sic] any constitutional violations by the City occurring prior to the release of the vehicles." (*See* MSJ Opinion and Order, RE 152, Page ID # 3150). As an initial matter, no one disputed that "that the terms of the Hold Harmless Agreements [were] clear and unambiguous." (Magistrate's Report and Recommendation, RE 140, Page ID # 2984 (*citing* Ford's MSJ, RE 120, Page ID # 2343; Blue Ash's MSJ, RE 121, Page ID # 2367). Nor could they. The promise was clear and unambiguous:

Ford Motor Credit agrees to indemnify and hold you harmless for any liability or claim made against you arising out of your releasing of this vehicle to Automobile Recovery.

(*See* Barbara Burton Depo. Ex. 11, RE 106-6, Page ID # 985; Barbara Burton Depo. Ex. 12, RE 106-7, Page ID # 986).

In any event, the District Court was correct that Ford did not specifically promise to "indemnify the City and hold the City harmless for any constitutional violation by the City occurring prior to the release of the vehicles." (MSJ Opinion

and Order, RE 152, Page ID # 3150)  In fact, Ford's obligation was much broader – it promised to indemnify Blue Ash from "*any liability or claim.*"

This promise was clear.  Ford knew that the City would rely on it and release the Trucks. (*See* Barbara Burton Depo., RE 106, Page ID # 966).  Indeed, reasonably and foreseeably relying upon Ford's promise, that is precisely what the City did.  Blue Ash released the Trucks to Ford the very next day.  As a result, Blue Ash was damaged via Right-Now's claims for the loss of use of the Trucks during the time that Ford held the vehicles.  The District Court's Opinion granting Ford summary judgment on Blue Ash's promissory estoppel Cross-Claim should be reversed.

**D.    The District Court Erred In Granting Ford's Motion For Summary Judgment On The City's Cross-Claim For Indemnification Because Ford Was Primarily Liable For Right-Now's Damages.**

Finally, the District Court misapplied applicable law when it held that Blue Ash, not Ford, was primarily liable for Right-Now's damages.  Under Ohio law, "[i]ndemnity . . . is the right of a person who is only secondarily liable to recover from the person primarily liable for proper expenditures paid to a third party injured through the violation of their common duties."  *Lattea v. Akron*, 9 Ohio App.3d 118, 122, 458 N.E.2d 868 (10th Dist. 1982); *see also Wagner-Meinert, Inc. v. EDA Controls Corp.,* 6th Cir. No. 06-3777, 2007 U.S. App. LEXIS 4879, *7 (Feb. 23, 2007).

25

According to the District Court, "Right-Now claimed injuries resulting from the City's failure to provide notice that it was going to release the Trucks to Ford, an action for which only the City was responsible." (*See* MSJ Opinion and Order, RE 152, Page ID # 3151). Thus, the District Court found that "the City bears primary liability for any injuries caused by the failure to provide notice and an opportunity to be heard." (*See id*.).

Contrary to the District Court's Opinion, however, the only "injuries" Right-Now complained of were incurred *during the period of time that Ford held the Trucks*. Even the District Court held that Right-Now was not entitled to the Trucks when they were in Blue Ash's possession because the Trucks were lawfully seized under a valid search warrant. (*See* MSJ Opinion and Order, RE 152, Page ID # 3141-42); *State v. Bates*, 6th Dist. Williams No. WM-11-007, 2012-Ohio-1397, ¶ 14 ("If an item is potentially needed for evidence or for some other lawful purpose, it may be held."). Nevertheless, the District Court concluded that Blue Ash was primarily responsible for Right-Now's damages when Ford was holding and in control of the Trucks.

Moreover, Blue Ash was acting at Ford's direction when it released the Trucks. Ford, the lienholder, requested that the City release the Trucks and told Blue Ash that it was entitled to possession of the Trucks under its contracts with Right-Now. (*See* Barbara Burton Depo., RE 106, Page ID # 963; Barbara Burton

26

Depo. Ex. 7, RE 106-2, Page ID # 980-81; Barbara Burton Depo. Ex. 8, RE 106-3, Page ID # 982).   But then, after Blue Ash complied with this request, Ford claimed, and the District Court found, that the City was somehow responsible for damages Right-Now incurred when Ford held the Trucks and would not return them.

Notably, Ford held the Trucks for almost three months -- from February 17, 2011 to May 4, 2011.  (Right Now's Amended Complaint, RE 36, Page ID # 201). As Right-Now correctly stated, "[a]fter possessing the Trucks for roughly 75 days – and simultaneously accepting Right Now's monthly payments – Ford ignored Defendant Blue Ash's April 14, 2011 letter requesting [Ford] to return the Trucks to Right-Now."  (*See* Right-Now's Opposition to Ford's MSJ, RE 125, Page ID # 2460-61).

Ultimately, Ford, not Blue Ash, is responsible for the damages Right-Now claimed it incurred during the time that Ford held the Trucks.  Because Blue Ash was required to pay Right-Now damages that are indisputably related to the release of the Trucks to Ford, Ford must indemnify Blue Ash for the full amount of the damages.  This Court should reverse the District Court's Opinion, deny Ford's motion for summary judgment, and grant Blue Ash's motion for summary judgment on liability on its Cross-Claim for common law indemnification.

## CONCLUSION

For any and all of the foregoing reasons, Blue Ash respectfully requests that this Court reverse the District Court's Opinion and Order denying Blue Ash's motion for summary judgment and granting summary judgment to Ford on the City's Cross-Claims.

Respectfully submitted,

s/ Bryan E. Pacheco
Bryan E. Pacheco (0068189)
Mark G. Arnzen, Jr. (0081394)
DINSMORE & SHOHL LLP
1900 First Financial Center
255 East Fifth Street
Cincinnati, Ohio  45202
Phone:      (513) 977-8200
Fax:          (513) 977-8141
Email: bryan.pacheco@dinsmore.com
         mark.arnzen@dinsmore.com

**Attorneys for Cross-Claim Plaintiff/Appellant City of Blue Ash, Ohio**

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Fed. R. App. P. 32(a)(7)(B) and (C), I hereby certify that the foregoing Brief of Cross-Claim Plaintiff/Appellant complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

1.   This Brief contains 6,457 words according to the word processing software (Microsoft Office Word 2007) used to prepare the Brief.

2.   This Brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because the Brief has been prepared in a proportionally spaced type face using Microsoft Office Word 2007 in Times New Roman, 14 point font.

s/ Bryan E. Pacheco               

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 4, 2015, I filed electronically via CM/ECF a true copy of the foregoing with notice of same being electronically served by the Court upon all counsel of record in this action.

s/ Bryan E. Pacheco               

# **<u>ADDENDUM</u>**

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT
## CASE NO. 15-3621

CITY OF BLUE ASH, OHIO                                     Appellant,

v.

FORD MOTOR CREDIT COMPANY, LLC                    Appellee.

## APPELLANT'S DESIGNATION OF RECORD ON APPEAL

Pursuant to 6th Cir. R. 30(g), Appellant City of Blue Ash, Ohio, by counsel,

hereby submits this Designation of Record. The following should be included in

the Record on Appeal:

| District Court Record Entry Number | Description | Page ID # Range |
|---|---|---|
| 1 | Notice of Removal | 1-4 |
| 3 | Right-Now Complaint | 36-40 |
| 36 | Right-Now Amended Complaint | 194-207 |
| 52 | Blue Ash Answer | 246-57 |
| 56 | Blue Ash Motion for Leave | 262-267 |
| 59 | Ford Response in Opposition | 301-308 |
| 74 | Magistrate Judge Order Granting Leave to Amend | 368-374 |
| 75 | Blue Ash Amended Answer and Cross-Claims | 375-391 |
| 76 | Ford Answer to Cross-Claims | 404-409 |
| 94 | Right-Now Motion for Partial S.J. | 514-628 |
| 103 | James Kelley Deposition | 643-679 |

| 103-2 | James Kelley Deposition Exhibit 2 | 682-683 |
|---|---|---|
| 103-3 | James Kelley Deposition Exhibit 3 | 684-688 |
| 103-9 | James Kelley Deposition Exhibit 9 | 710-721 |
| 103-10 | James Kelley Deposition Exhibit 10 | 722 |
| 103-11 | James Kelley Deposition Exhibit 11 | 723 |
| 103-12 | James Kelley Deposition Exhibit 12 | 724-725 |
| 104 | Robert Gerhardt Deposition | 727-780 |
| 104-1 | Robert Gerhardt Deposition Exhibit 1 | 781-782 |
| 104-7 | Robert Gerhardt Deposition Exhibit 16 | 815-824 |
| 105 | Steven Schlie Deposition | 883-907 |
| 106 | Barbara Burton Deposition | 958-977 |
| 106-2 | Barbara Burton Deposition Exhibit 7 | 980-981 |
| 106-3 | Barbara Burton Deposition Exhibit 8 | 982 |
| 106-6 | Barbara Burton Deposition Exhibit 11 | 985 |
| 106-7 | Barbara Burton Deposition Exhibit 12 | 986 |
| 106-10 | Barbara Burton Deposition Exhibit 29 | 990-996 |
| 107 | Harold Daughtery Deposition | 1025-1042 |
| 108 | Larry Ratliff Deposition | 1048-1073 |
| 111 | Richard Riley Deposition | 1921-1948 |
| 112 | Dennis Boone Deposition | 2012-2046 |
| 116-1 | Mark G. Arnzen, Jr. Affidavit | 2223-2288 |
| 120 | Ford MSJ | 2329-2349 |
| 121 | Blue Ash MSJ | 2362-2371 |
| 123-1 | Mark G. Arnzen, Jr. Affidavit in Support of Blue Ash Opposition to Ford MSJ | 2427-2437 |
| 125 | Right-Now Opposition to Ford MSJ | 2454-2508 |
| 140 | Magistrate Judge Report and Recommendation | 2937-2990 |
| 146 | Blue Ash Objection to Report and Recommendation | 3082-3094 |

| 152 | MSJ Opinion and Order | 3132-3152 |
| 155 | Agreed Order of Dismissal | 3156-3157 |
| 156 | Notice of Appeal | 3158-3159 |

Bryan E. Pacheco (0068189)
Mark G. Arnzen, Jr. (0081394)
DINSMORE & SHOHL LLP
1900 First Financial Center
255 East Fifth Street
Cincinnati, Ohio  45202
Phone:      (513) 977-8200
Fax:         (513) 977-8141
Email: bryan.pacheco@dinsmore.com
          mark.arnzen@dinsmore.com

**Attorneys for Cross-Claim Plaintiff/Appellant City of Blue Ash, Ohio**